NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| YASIN VILLAFANA, <br><br> Plaintiff, <br><br> v. <br><br> OFFICER JOSEPH J. MORGAN, *et al.*, <br><br> Defendants. | No. 22cv4454 (EP) (JBC) <br><br> **OPINION** |

**PADIN, District Judge.**

*Pro se* Plaintiff Yasin Villafana alleges that, on May 10, 2022, when he was a pretrial detainee at the Essex County Correctional Facility ("ECCF"), Defendant Correctional Officer Joseph J. Morgan[1] ("Officer Morgan") used excessive force against him in violation of 42 U.S.C. § 1983 (the "May 10 Incident"). D.E. 1 ("Complaint" or "Compl."). Officer Morgan moves for summary judgment. D.E. 57-2 ("Motion" or "Mot.").[2] Plaintiff opposes.[3] Morgan replies.[4]

---

[1] Plaintiff has not served the remaining defendants (Lieutenant Bell, Sergeant Cooper, Sergeant Matos, Officer Ferrell, Officer Quinones, and an unidentified Hearing Officer). *See* Dkt. Plaintiff has requested assistance with service of the remaining defendants because he was told that he needs their first names for service, which he does not have. D.E. 60; *see also* D.E. 24. The Court will order the parties to meet and confer on the issue of service of the remaining defendants.

[2] Officer Morgan's Notice of Motion is filed at D.E. 57.

[3] As discussed further *infra* n.5, Plaintiff submitted an omnibus document setting forth disputes of fact and also providing legal arguments opposing Officer Morgan's Motion. D.E. 58. The Court will construe the legal arguments in D.E. 58 at CM/ECF pages 10–14 as Plaintiff's brief in opposition to the Motion ("Opposition" or "Opp."). For ease of reference, the Court will use the page numbers assigned by CM/ECF for all references to Plaintiff's filings.

[4] As also discussed further *infra* n.5, Officer Morgan submitted an omnibus document responding to Plaintiff's disputes of fact and also providing legal arguments replying to Plaintiff's Opposition. D.E. 59. The Corut will accordingly construe the legal arguments in D.E. 59 at pages 6–10 as Officer Morgan's brief replying to Plaintiff's Opposition ("Reply").

The Court decides the Motion without oral argument. *See* Fed. R. Civ. P. 78; L. Civ. R. 78.1(b). As explained below, because the parties' submissions present genuine disputes of material fact concerning the nature, duration, and justification for the force used by Officer Morgan, the Court will **DENY** Officer Morgan's Motion. The Court will also *sua sponte* appoint *pro bono* counsel for Plaintiff and re-open discovery as described herein.

## I.    BACKGROUND

### A.    Facts[5]

---

[5] The facts in this Section, and throughout the Opinion, are drawn from the parties' statements of material facts and the Complaint, as explained further below. All facts are undisputed unless otherwise indicated.

In support of his Motion, Officer Morgan submitted a statement of material facts, D.E. 57-1 ("Morgan's SOMF"), supported by Olivia Palamara, Esq.'s Certification of Counsel, D.E. 57-5. As part of his omnibus filing at D.E. 58, *see supra* n.3, Plaintiff responds to Morgan's SOMF through numbered paragraphs on pages 4–8. The Court will therefore refer to those pages as "Plaintiff's Response to Morgan's SOMF." Plaintiff also provides facts of his own in numbered paragraphs in D.E. 58 at 9, which the Court construes as his counterstatement of material facts and refers to as "Plaintiff's CSOMF." Officer Morgan, in turn, provides his reply to Plaintiff's Response to Morgan's SOMF at paragraphs 1–27 on pages 1–4 of his omnibus filing at D.E. 59 ("Morgan's Reply SOMF") and his response to Plaintiff's CSOMF at paragraphs 1–4 on pages 4–5 of D.E. 59 ("Morgan's Response to Plaintiff's CSOMF").

Officer Morgan correctly notes that Plaintiff does not always "cit[e] to the affidavits and other documents submitted in connection with the motion" in his Response to Morgan's SOMF as required by Local Civil Rule 56.1(a). *See* Morgan's Reply SOMF. Because it "is not the Court's responsibility to comb the record," the Court has the discretion to deem undisputed for purposes of summary judgment any material fact not disputed in a responsive statement of facts. *Baker v. The Hartford Life Ins. Co.*, No. 08-6382, 2010 WL 2179150, at *2 n.1 (D.N.J. May 28, 2010), *aff'd*, 440 F. App'x 66 (3d Cir. 2011). The Third Circuit has, however, made clear that the purpose of the District of New Jersey's local rules is to facilitate the resolution of the motions before its courts, not to punish the parties for procedural defects. *Boswell v. Eoon*, 452 F. App'x 107, 111 (3d Cir. 2011) (citing *Lorenzo v. Griffith*, 12 F.3d 23, 28 (3d Cir. 1993)). Given that Plaintiff is proceeding *pro se* and that the record is limited, the Court accordingly declines to automatically deem undisputed the facts in Morgan's SOMF, Reply SOMF, and Response to Plaintiff's CSOMF. Instead, where it has identified evidence in the record that contravenes Officer Morgan's representation of the facts in his SOMF, Reply SOMF, and Response to Plaintiff's CSOMF, the Court dee,s those facts disputed or unsupported by the record. *See Digiacomo v. Prudential Ins.*

2

*1.    Plaintiff's arrival at ECCF and medical intake*

Plaintiff, then a pretrial detainee, was transferred from Union County Jail to ECCF on May 5, 2022.  Morgan's SOMF ¶ 17; D.E. 57-11, Ex. F ("Inmate Commitment Summary Report") at 1.  In a medical assessment at ECCF intake on May 8, 2022, Plaintiff reported injuries from a fight during his arrest.  Morgan's SOMF ¶¶ 18, 20; D.E. 57-12, Ex. G ("ECCF Intake Medical Encounter") at 0132–33.[6]  Plaintiff reported severe pain in his right hand and right ribs, and he had lacerations on his right fingers.  Morgan's SOMF ¶ 19; ECCF Intake Medical Encounter at 0132–33, 0137.

*2.    The May 10 Incident*

On the morning of May 10, 2022, a few days into Plaintiff's time at ECCF, Plaintiff and Officer Morgan crossed paths in the intake bullpen.  *See* Morgan's SOMF ¶¶ 1–2; Compl. at 5.  At that time, Officer Morgan was assigned to distribute medication for the Medication Assisted Treatment ("MAT") program.  Morgan's SOMF ¶ 1; D.E. 57-6, Ex. A ("Incident Report") at 0059.  It is at this point that Plaintiff's and Officer Morgan's descriptions of the May 10 Incident begin to starkly diverge.

---

*Co. of Am.*, 501 F. Supp. 2d 626, 629 n.4 (D.N.J. 2007) (cited approvingly by the Third Circuit in *Boswell*, 452 F. App'x at 112).

The Court will also treat Plaintiff's Complaint—which was signed under penalty of perjury, Compl. at 7—as an affidavit in opposition to Officer Morgan's Motion.  *See Woodward v. Tambini*, No. 23-450, 2025 WL 914313, at *2 (D.N.J. Mar. 26, 2025) ("[A] *pro se* prisoner's signed and dated complaint, made under penalty of perjury . . . qualifies as a verified complaint, which may be treated as an affidavit in opposition to a motion for summary judgment under Federal Rule of Civil Procedure 56, to the extent it sets forth specific facts based on personal knowledge." (quoting *Brown v. Dow*, 08-433, 2011 WL 5080179, at *2 (D.N.J. Oct. 25, 2011))).

[6] For the exhibits produced by Officer Morgan, the Court refers to the page number as indicated by the last four digits of the Bates stamp on the exhibit.

a)      Officer Morgan's description of the May 10 Incident

According to Officer Morgan, while Officer Morgan was passing out medication, Plaintiff asked Officer Morgan if Plaintiff could see a nurse.  Morgan's SOMF ¶ 2.  Officer Morgan responded that he was in the intake bullpen only to administer medication to one inmate in the MAT.  *See id.*; Incident Report at 0061.

In his incident report, Officer Morgan described his subsequent interaction with Plaintiff as follows:

> I explained to him I was there to see only one inmate, he then stated in an aggressive and threating manner while advancing toward the door "am coming for pension pussy[.]"  I put my ha[n]d up to stop him from advancing toward me[.]  [W]hen his chest touched my hand, I then ordered him to step out of the bullpen.  I was attempting to regain control of him and he pulled away.  He refused verbally and physically[.]  I then stepped toward him and took a holed [sic] of his wrist.  He then pulled away again and ran away from me.  At this point he repeated "get the fuck off me I will fucking kill you." I was able to secure the inmate in handcuffs.  While being escorted to a secure area he again repeated "I will fuck you up[.]" Sgt. Cooper then arrived and relived [sic] me of the inmate.

Incident Report at 0061.

b)      Plaintiff's description of the May 10 Incident

For his part, Plaintiff maintains that, when Officer Morgan was passing out medication, Plaintiff asked Officer Morgan about "the health conditions and the hazard [the inmates] w[ere] being held under."  Compl. at 15.  Plaintiff also points to an interview of Nurse Barbara Alexis ("Nurse Alexis") conducted as part of ECCF's Internal Affairs Bureau ("IAB") and Special Investigation Division ("SID") investigation into the May 10 incident (the "IAB/SID Investigation"), where Nurse Alexis stated that Plaintiff "said what's your name Morgan, I'll take your fucking pension to [Officer] Morgan."  *See* Plaintiff's Response to Morgan's SOMF ¶ 4 (quoting D.E. 57-10, Ex. E ("Investigation Report") at 0084–85).  According to Plaintiff, Officer Morgan told Plaintiff "nigger shut-up" and then "attack[ed] [Plaintiff] by grabbing at the front of

4

[his] shirt (ripping it) and calling a code on [Plaintiff]." Compl. at 15. Plaintiff again also directs the Court to Nurse Alexis's interview, where she stated that Officer "Morgan pushed [Plaintiff] in the chest into the bullpen and she tried to get out of way and yelled to the other nurse that they needed help." *See* Plaintiff's Response to Morgan's SOMF ¶ 4 (quoting Investigation Report at 0084–85).

Plaintiff asserts that he was then handcuffed by another officer, Officer Land, "while Off[icer] Morgan was acting irate, and was pushing other officers out of the way to take control of [Plaintiff]." Compl. at 15. As Officer Morgan escorted Plaintiff down the hall, he put Plaintiff in a neck chokehold until Plaintiff could not breathe, and then he stomped on Plaintiff's left calf, leaving a bruise. *Id.* As they proceeded down the hall with another officer, Officer Morgan pinned Plaintiff's back to the wall and placed his forearm in Plaintiff's throat. *Id.* Other officers yelled for Morgan to stop, but Officer Morgan yelled at them to get back and kept his forearm in Plaintiff's throat until Sergeant Cooper arrived and called him off. *Id.*

### 3. The post-incident medical evaluation

Per protocol, Plaintiff was then taken to the medical department for evaluation. Morgan's SOMF ¶ 22; D.E. 57-13, Ex. H ("May 10, 2022, Medical Evaluation"). Plaintiff complained of pain in his right hand, left leg, right ribs, and neck, which he attributed to a "brawl." Morgan's SOMF ¶ 23; May 10, 2022, Medical Evaluation. Plaintiff was diagnosed with a cervical sprain, ribcage contusion, and right finger open wound. Morgan's SOMF ¶ 25; May 10, 2022, Medical Evaluation.

### 4. Plaintiff's disciplinary hearing and the IAB/SID Investigation

After the May 10 Incident, Plaintiff was charged with threatening a staff member with bodily harm and refusing to obey a direct order from a staff member. Incident Report at 0065. Plaintiff was provided copies of his disciplinary reports, as indicated by his signature, and he was

5

placed in detention pending a hearing. Morgan SOMF ¶ 6; D.E. 57-8, Ex. C ("Disciplinary Reports"). According to Officer Morgan, Plaintiff attended his disciplinary hearing on May 12, 2022, and pled not guilty. Morgan's SOMF ¶ 8 (citing D.E. 57-9, Ex. D ("Adjudication of Disciplinary Charges")). While the Adjudication of Disciplinary Charges indicates that the hearing was not held *in absentia*, Plaintiff maintains that he did not attend the hearing and the Adjudication of Disciplinary Charges does not include his signature. *See* Adjudication of Disciplinary Charges; Plaintiff's Response to Morgan's SOMF ¶ 8.

Sometime after the disciplinary hearing, Plaintiff made an excessive force complaint, leading to the IAB/SID Investigation. Morgan's SOMF ¶ 9; Investigation Report at 0080. Investigator V. Conti ("Investigator Conti") began his initial investigation on June 20, 2022, and completed it on July 6, 2022. Investigation Report at 0080–88. During that time, Investigator Conti interviewed Plaintiff, Nurse Alexis, Sergeant Cooper, Officer Land, as well as one other lieutenant and several other officers. *See id.* Investigator Conti also reviewed video surveillance footage of the incident, which he described in the Investigation Report as showing that Officer Morgan had pushed Plaintiff in the chest at approximately 09:00:48 and that, after Plaintiff had been handcuffed and escorted into a staging holding room, Officer Morgan had pulled or struck Plaintiff in the leg at approximately 09:04:06. *Id.* at 0086–88.[7]

On July 12, 2022, after completing his initial investigation, Investigator Conti participated in a TEAMS case review with members of the Essex County Prosecutor's Professional Standards Bureau. *Id.* at 0089. At that case review, Investigator Conti was advised that the Essex County Prosecutor's Office would not be taking the case and would be returning it to the Department of Corrections for administrative handling. *Id.*

---

[7] As discussed further *infra* Section III, the Court has not been provided with a copy of any video surveillance.

Investigator Conti, accompanied by another investigator (Investigator Hamlin), then conducted an interview of Officer Morgan. *Id.* at 0089–92. As Investigator Conti recounts in his Investigation Report, he

> showed [Officer] Morgan the video of the incident documenting that his report and account of the incident w[ere] not truthful and factual. The video shows that [Officer] Morgan's hand was not up and the inmate was not advancing. The video shows that [Officer] Morgan clearly pushed the inmate to the chest and then went into the bullpen after the inmate. [Officer] Morgan was given the opportunity to correct his misrepresentation however he again stated that the inmate was advancing towards him and that he put his hand up to stop him. [Investigator Conti] again clarified to [Officer] Morgan to look at the video because what he is saying is not what happened, this was corroborated by Inv[estigator] Hamlin. [Officer] Morgan stated that yes he did push the inmate first and went into the bullpen after him but in an attempt to secure the inmate and take him out of the bullpen. . . .

*Id.* at 0090.

Based on this interview of Officer Morgan (as well as the other materials collected), Investigator Conti, on July 20, 2022, made the following findings in the Investigation Report under the heading "Disciplinary charges for policy violations":

> On May 10, 2022[,] [Officer] Morgan was observed initiating a use of force that does not appear to be appropriate. Per policy, use of force should only be used as a last resort and furthermore every effort to deescalate should be made. [Officer] Morgan also submitted an official report that was not factual and truthful. Even after being given numerous opportunities to correct his statements, he continued to be intentionally be [sic] deceptive. The video clearly shows th[at] [Officer] Morgan raises his hand and pushes [Plaintiff] to his chest and then goes into the bullpen after the inmate. [Plaintiff] was not advancing towards [Officer] Morgan and does not appear to being [sic] doing anything other than talking. [Officer] Morgan also abandoned his post and the protection of Nurse Alexis and the suboxone cart leaving both vulnerable to seizure from the inmate population. [Officer] Morgan also failed to remove himself from the situation once handcuffs were applied. [Officer] Morgan acknowledged that he should have but his excuse was that no other officers offered to take over and he does not know why he did not ask someone to take over and remove himself from the incident.

*Id.* at 0092–93.[8]

Consistent with those findings, Investigator Conti stated that Officer Morgan was "being charged with violations of the rules of regulations manual, the New Jersey Attorney General's Guidelines on Use-of-Force, as well as policy violations." *Id.* at 0093. These violations included neglect of duty, falsification or withholding of information, as well as violations implicating departmental truthfulness and use-of-force standards. *Id.* at 0093–99. Investigator Conti then forwarded the case "to the Administration and disciplinary unit for any action deemed necessary and appropriate." *Id.* at 0099.

On July 22, 2022, Investigator Conti provided Plaintiff with a memorandum stating: "The Essex County Department of Corrections, Internal Affairs Bureau, has completed its investigation into the conduct of Officer Joseph J. Morgan # 3039. The investigation revealed that the Officer violated departmental rules and regulations. He will be subject to appropriate discipline under our agency's procedures." D.E. 58 at 15 ("IAB Memorandum").

Despite the Investigation Report and IAB Memorandum described above, Officer Morgan, with his Motion, submitted a certification from ECCF's Disciplinary Captain stating that Morgan was "never charged" with any disciplinary infraction arising from the May 10 Incident. D.E. 57-14, Ex. I ("Radice Certification").

**B.    Procedural History**

The Complaint was filed on July 6, 2022. Compl. On May 12, 2023, the Hon. John Michael Vasquez, U.S.D.J., granted Plaintiff's application to proceed *in forma pauperis* and directed that the Clerk of Court file the Complaint but not issue summons. D.E. 21.

---

[8] The Investigation Report contains no official findings that Officer Morgan used a racial slur, touched Plaintiff's throat, or choked Plaintiff in any manner. Morgan's SOMF ¶¶ 11–13; *see generally* Investigation Report.

8

After the case was reassigned to the undersigned, D.E. 23, the undersigned *sua sponte* screened the Complaint pursuant to 28 U.S.C. § 1915(e)(2) and permitted Plaintiff's Fourteenth Amendment excessive force claim under 42 U.S.C. § 1983 and any related state-law claims to proceed against Officer Morgan.  D.Es. 25 & 26.  The Court also permitted Plaintiff's claims against several other defendants to proceed[9] but directed dismissal of Defendants Sergeant Smith and Advocate McCann.  *Id.*  The United States Marshals then served Officer Morgan on August 16, 2024.  D.E. 35.  After the parties had mostly completed discovery, the Hon. James B. Clark, U.S.M.J., directed that any dispositive motions be filed by August 1, 2025 (after the close of discovery).  D.E. 56.  This Motion followed.

## II.    LEGAL STANDARD

Summary judgment is proper only when the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "[A] fact is material if it 'might affect the outcome of the suit under the governing law.'" *Moore v. Walton*, 96 F.4th 616, 622 (3d Cir. 2024) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute is genuine "when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  (quoting *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden to establish the basis for its motion and the absence of a genuine issue of material fact. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 237 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The movant must support its position by citing to the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . . "  Fed. R. Civ. P.

---

[9] As noted *supra* n.1, these other defendants have not yet been served.

9

56(c)(1)(A). "If the moving party successfully points to evidence of all of the facts needed to decide the case on the law short of trial, the non-moving party can defeat summary judgment if it nonetheless produces or points to evidence in the record that creates a genuine issue of material fact." *El*, 479 F.3d at 238 (citing *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 637 (3d Cir. 1993)). Summary judgment is appropriate, however, if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Under Rule 56, a court must view the evidence presented in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255.

## III.     DISCUSSION

Officer Morgan moves for summary judgment on Plaintiff's Fourteenth Amendment excessive force claim brought under 42 U.S.C. § 1983, contending that no reasonable jury could find that he used constitutionally excessive force during the May 10 Incident. *See generally* Mot.

As described below, having reviewed the evidence relevant to the parties' materially different descriptions of the May 10 Incident, the Court concludes that Plaintiff has brought forward sufficient evidence from which a reasonable jury could find that he has established each element on which he bears the burden of proof, and will therefore **DENY** Officer Morgan's Motion. And, as further explained, the Court will also *sua sponte* appoint *pro bono* counsel for Plaintiff and re-open discovery as described herein.

### A.     Officer Morgan Is Not Entitled to Summary Judgment on Plaintiff's Excessive Force Claim

Officer Morgan's Motion rests on the premise that his encounter with Plaintiff was, at most, a brief and justified use of *de minimis* force in response to a verbally disruptive detainee and, therefore, falls outside the scope of the Fourteenth Amendment. *See* Mot. at 1–2. Plaintiff disputes

10

that characterization. *See* Opp.; *see also supra* Section I.A. He alleges that Officer Morgan pushed him and employed a sustained "rear-neck chokehold" such that Plaintiff "couldn't breathe" during the escort to a secure area, stomped on Plaintiff's left calf, and then employed a forearm-to-throat restraint while Plaintiff's back was against the wall. Compl. at 15. For the reasons explained below, the Court ultimately finds that while it is unable to resolve these disputed facts regarding the May 10 Incident at this stage of the proceeding, Plaintiff has brought forth sufficient evidence to survive summary judgment on his excessive force claim.

In suits by pretrial detainees alleging excessive force under the Fourteenth Amendment in violation of 42 U.S.C. § 1983,[10] the Supreme Court prescribes an objective-reasonableness standard. *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015). Pursuant to this standard, for a pretrial detainee to prevail on an excessive force claim, he must show that the force purposely or knowingly used against him was objectively unreasonable—judged in light of considerations including, but not limited to, (1) the relationship "between the need for the use of force and the amount of force used," (2) the extent of the detainee's injury, (3) any effort by the officer to limit the amount of force, (4) the threat reasonably perceived, and (5) whether the detainee actively resisted. *Id.* at 397. At summary judgment, while courts should view the circumstances from the perspective of a reasonable officer, they must still construe the evidence in the light most favorable to the non-movant. *See, e.g.*, *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 195 (3d Cir. 2021) (viewing the circumstances from the perspective of a reasonable officer but nevertheless finding that a reasonable jury could determine that the officer in question used objectively unreasonable force based on the evidence construed in the light most favorable to the plaintiff).

---

[10] Officer Morgan does not dispute that he is a state actor for purposes of 42 U.S.C. § 1983. *See generally* Mot.

Applying the objective-reasonableness inquiry articulated in *Kingsley* to the record before the Court and construing that record in the light most favorable to Plaintiff, the Court cannot conclude as a matter of law that the force Officer Morgan used in the May 10 Incident was constitutionally permissible.

To begin, the parties fundamentally disagree about the nature and degree of force used. Officer Morgan characterizes the encounter as involving no more than a brief defensive push upon Plaintiff's request for medical treatment, which he used to restore order during a tense interaction. *See* Mot. at 9–10. Plaintiff, by contrast, alleges that during their verbal exchange, Officer Morgan became irate and pushed him, and after Plaintiff was handcuffed, Morgan choked him, stomped on his leg, and pinned him against a wall and pressed his forearm on Plaintiff's neck. *See* Compl. at 15. These disputed facts bear directly on whether the amount of force used was proportionate to any legitimate need for force. *See Kingsley*, 576 U.S. at 97 (the "objective reasonableness [of the use of force] turns on the facts and circumstances of each particular case").

The medical evidence offered by Officer Morgan does not, as he suggests, resolve this reasonableness inquiry. Officer Morgan points to evidence that Plaintiff arrived at ECCF several days before the May 10 Incident with documented injuries—including a sutured hand laceration and rib complaints—as proof that Plaintiff did not suffer any significant injuries from the May 10 Incident (and therefore that any force used was minimal). *See* Mot. at 10; Morgan's SOMF ¶¶ 18–26 (citing ECCF Intake Medical Encounter). However, as even Officer Morgan implicitly admits, Plaintiff's May 10, 2022, Medical Evaluation describes neck and leg pain not described in the ECCF Intake Medical Encounter and includes an additional diagnosis of cervical sprain. *See* May 10, 2022, Medical Evaluation; Morgan's SOMF ¶ 26. Whether Plaintiff's post-incident complaints reflect new injuries, aggravation of prior conditions, or neither is a question for the jury. *See Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002) (finding that the extent of the

12

injury was a question to be resolved by the trier of fact, as was the related issue of the impact of the extent of the injury on the credibility of the plaintiff).  In any event, the extent of injury is just one factor in the reasonableness inquiry—not a dispositive threshold—and even modest or non-permanent injuries may support an excessive-force claim where the nature of the force itself is disputed.  *See Kingsley*, 576 U.S. at 397 (extent of force is a relevant circumstance to be weighed against other factors); *Stevenson v. Cnty. Sheriff's Off. of Monmouth*, No. 13-5953, 2024 WL 1956455, at *9 (D.N.J. May 3, 2024) (collecting cases establishing that serious injury is not required to sustain an excessive force claim and explaining that the plaintiff "ha[d] provided sufficient evidence of injury, and whether [p]laintiff's injuries were minor or serious [was] an issue to be resolved by a jury").

The Court is further unable to resolve on this record whether Officer Morgan made reasonable efforts to limit the use of force.  While Officer Morgan asserts that Plaintiff was handcuffed and escorted from the bullpen without incident, Plaintiff maintains that after he was handcuffed, Officer Morgan choked him until he could not breathe, stomped on his leg, and pinned him against a wall with his forearm on his throat.  The sequence, duration, and escalation of force are disputed facts that directly inform the objective-reasonableness analysis under *Kingsley*.

The same is true with respect to the threat reasonably perceived or understood by Officer Morgan.  Plaintiff does not dispute that he was verbally upset upon rejection of his request for medical care, *see* Plaintiff's Response to Morgan's SUF ¶ 2, but he contends that a use of force occurred after he was handcuffed, in addition to Officer Morgan's push after the verbal altercation. If the jury were to accept Plaintiff's version of the incident, "a jury could find that there was no penological need for any additional force" after Plaintiff was handcuffed, making Officer Morgan's alleged decision to choke Plaintiff, stomp on his leg, and pin him against a wall "wholly gratuitous and objectively unreasonable." *See Jacobs*, 8 F.4th at 195 (finding a reasonable juror

13

could conclude a use of force was objectively unreasonable after a fight ended and the inmates were compliant and posed no threat); *see also Stevenson*, 2024 WL 1956455, at *5–7 (D.N.J. May 3, 2024) (denying summary judgment on Fourteenth Amendment excessive force claims because a reasonable jury could find that the pretrial detainee plaintiff posed no threat to officers or the public when he adjusted his ankle shackles before officers slammed him to the ground and dragged him back to a holding cell).

The parties' submissions concerning the IAB/SID Investigation further underscore why this matter cannot be resolved at summary judgment. Although Officer Morgan submitted a certification from ECCF's Disciplinary Captain stating that Morgan was "never charged" with any disciplinary infraction arising from the May 10 Incident, *see* Radice Certification, the Investigation Report indicates that disciplinary charges *did issue* for violations implicating truthfulness and use-of-force standards, *see* Investigation Report at 0093–99. The Radice Certification therefore conflicts with the contemporaneous investigative record and creates an evidentiary dispute for the jury to resolve.

And, while neither the issuance of disciplinary charge nor any other administrative determination in the Investigation Report bind the Court on the constitutional excessive force question—because an internal finding of misconduct does not substitute for a judicial determination of excessive force, that limitation does not render the report irrelevant. To the contrary, the video descriptions and Investigator Conti's contemporaneous observations supply admissible evidence corroborating Plaintiff's account and undermining Officer Morgan's version, including with respect to three categories of evidence that are significant for the *Kingsley* analysis: (1) contemporaneous video footage that Investigator Conti described in detail showing an initial push to the chest followed by, after Plaintiff was handcuffed, contact to Plaintiff's leg; (2) Officer Morgan's own statements during his interview, in which—after being shown the video footage—

14

he acknowledged, *inter alia*, that he initiated the push and conceded that his written report did not accurately reflect the recorded events; and (3) Investigator Conti's considered conclusion that Officer Morgan "was observed initiating a use of force that d[id] not appear to be appropriate." Investigation Report at 0093–99. Viewed together with the other record evidence, the Investigation Report therefore supports the reasonable inference that the relevant physical contact was not a brief, defensive push but an escalatory episode warranting disciplinary review. *See Kingsley*, 576 U.S. at 396–97.

Moreover, the Investigation Report furnishes a nonconclusory basis to question Officer Morgan's credibility—both as to what occurred in the bullpen and as to the accuracy of his official report, which is material where the parties' accounts diverge about the extent and persistence of force after handcuffing. And, although the Essex County Prosecutor's Office declined criminal prosecution following a TEAMS review, it expressly returned the matter for administrative handling—a disposition that explains the absence of criminal charges without negating the investigative findings themselves. *See* Investigation Report at 0089. Because the materials regarding the IAB/SID Investigation thus supply independent evidentiary support for Plaintiff's version of events and—critically—create credibility and factual disputes sufficient for a reasonable juror to find that the force used during the May 10 Incident was objectively unreasonable under *Kingsley*, they reinforce the Court's determination to deny summary judgment.

The Court pauses here to address the conduct of Officer Morgan's (now-former) counsel, Olivia Palamara, Esq., with respect to the Investigation Report. While Ms. Palamara submitted the Investigation Report as an exhibit to the Motion, nowhere in the briefing or any statement of facts did Officer Morgan's counsel address the findings of Investigator Conti as set forth in the Investigation Report, Investigator Conti's description of the videos of the May 10 Incident, or Officer Morgan's admission therein that his incident report was not entirely truthful. In fact, Ms.

15

Palamara relied on that same incident report to assert that certain facts were undisputed. *See, e.g.*, Morgan's SOMF ¶ 1 (citing Incident Report). In describing Ms. Palamara's treatment of the Investigation Report, the Court does not mean to suggest that Officer Morgan's counsel had any specific obligation to detail in the Motion facts not helpful to Officer Morgan's case. The Court nevertheless notes that Ms. Palamara's decision to reference the Investigation Report and characterize portions of it while completely ignoring Officer Morgan's interview, the video descriptions, and Investigator Conti's findings obscured the true import of the Investigation Report. And, likely because Plaintiff has been proceeding *pro se*, these critical portions of the Investigation Report were not raised by Plaintiff in his submissions. This dynamic ultimately created a state of affairs wherein neither party's summary judgment submissions engaged with evidence highly relevant to this Motion.

The Court further notes that Ms. Palamara did not provide the Court with any explanation as to how the Radice Certification stating that Officer Morgan "was never charged with any disciplinary infraction in connection with [the] May 10, 2022 incident," Radice Certification ¶ 5, can be reconciled with the Investigation Report stating—under the heading "Disciplinary charges for policy violations"—that Officer Morgan was "being charged with violations of the rules of regulations manual, the New Jersey Attorney General's Guidelines on Use-of-Force, as well as policy violations," Investigation Report at 0093. The Court does not levy charges of misrepresentation or untruthfulness lightly, so it will not do so here without more information. It is, however, precisely this lack of information that leaves the Court with the impression that it is possible it has been misled here, potentially in violation of New Jersey Rule of Professional Conduct 3.3.[11] As further explained in the accompanying order, the Court will accordingly require

---

[11] RPC 3.3(a) provides, in relevant part, that "[a] lawyer shall not knowingly: (1) make a false statement of material fact or law to a tribunal; . . . (4) offer evidence that the lawyer knows to be

16

Ms. Palamara to show cause as to why her actions should not be reported to the New Jersey Office of Attorney Ethics.

The Court finally notes that Ms. Palamara did not produce the video evidence described by Investigator Conti in his report. While it is unclear to the Court whether Plaintiff ever specifically requested that video evidence, given Plaintiff's *pro se* status, the Court would be remiss in not raising the existence of that video evidence and its potential importance to this matter.

Even without the Investigation Report (and setting aside the attendant issues regarding the parties' discussion thereof), Officer Morgan's characterization of the encounter as involving only a brief push culminating in Plaintiff being placed into mechanical restraints is directly contested by Plaintiff's sworn allegations that Officer Morgan choked him until he could not breathe, stomped on his leg, and pinned him against the wall and placed his forearm on his neck. *See Jacobs*, 8 F.4th at 195 (summary judgment inappropriate where record permits a finding that force was more than trivial). And while courts appropriately account for the need to maintain order and security in correctional settings by considering that officers must make rapid decisions under pressure, *Whitley v. Albers*, 475 U.S. 312, 320–22 (1986), such deference to prison administration does not authorize the Court to resolve disputed factual questions in favor of the moving party. *See Jacobs*, 8 F.4th at 195 (construing the evidence of the threat posed by the inmate in the light most favorable to the plaintiff and concluding a reasonable juror could conclude the inmate posed no threat). Here, reasonable jurors could conclude the force used was not justified by the circumstances "from the perspective of a reasonable officer on the scene." *Id.* (citation modified). The Court will accordingly **DENY** Officer Morgan's Motion.

---

false . . .; or (5) fail to disclose to the tribunal a material fact knowing that the omission is reasonably certain to mislead the tribunal, except that it shall not be a breach of this rule if the disclosure is protected by a recognized privilege or is otherwise prohibited by law."

**B.    The Court Will Re-Open Discovery and *Sua Sponte* Appoint Plaintiff *Pro Bono* Counsel**

Given the nature of the factual disputes and the current evidentiary posture of the case, the Court will also exercise its discretion to appoint *pro bono* counsel for Plaintiff.  *See* 28 U.S.C. § 1915(e)(1); *Tabron v. Grace*, 6 F.3d 147, 155–57 (3d Cir. 1993) (setting forth the factors relevant to appointment of *pro bono* counsel, herein the "*Tabron* factors"); *Parham v. Johnson*, 126 F.3d 454, 457–58 (3d Cir. 1997); *Montgomery v. Pinchak*, 294 F.3d 492, 498–99 (3d Cir. 2002).

The Court does so because, on balance, the *Tabron* factors[12] weigh in favor of such an appointment.  For one, the record reflects that the IAB/SID Investigation relied upon contemporaneous surveillance footage that was timestamped and substantively described in the Investigation Report, yet that footage has not been produced to the Court.  In light of the centrality of the video evidence to the excessive force claim—and the possibility that the recording may no longer be retained in the ordinary course, the interests of justice warrant re-opening discovery afford Plaintiff the opportunity to determine the existence, retention status, and recoverability of the referenced footage, and, if it exists, to secure its production in admissible form.  Appointed counsel shall be authorized to conduct discovery on that issue as well as any further discovery permitted by Judge Clark—and to represent Plaintiff as this matter moves forward, including, if necessary, at trial.  The Court accordingly finds that the complexity of the evidentiary issues, the need for potential forensic or institutional-record inquiry concerning video retention, and the

---

[12] "These factors include whether: (1) the *pro se* party lacks the ability to present an effective case without an attorney; (2) the legal issues are complex or, the ultimate legal issues are not complex, but the *pro se* party lacks the familiarity with the rules of evidence and discovery needed to translate understanding of the law into presentation of the proofs; (3) factual investigation will be necessary and the party is not adequately able to pursue said investigation; (4) the case is likely to turn on credibility determinations; (5) the case will require expert testimony; and (6) the party is unable to attain and afford counsel on his/her own behalf." *Derrick v. Cuzzupe*, No. 22-4436, 2025 WL 1174401, at *2 (D.N.J. Apr. 22, 2025).

credibility-intensive nature of the case—all factors germane to the *Tabron* inquiry—weigh strongly in favor of appointment at this stage.  *See, e.g.*, *Derrick*, 2025 WL 1174401, at *1–4 (appointing *pro bono* counsel before trial in excessive force case where, among other things, the case was likely to turn on credibility determinations).  Given that the Court has also determined that Plaintiff's claim has merit in fact and law, *see supra* Section III.A; *see Tabron*, 6 F.3d at 155–56, appointment of *pro bono* counsel is therefore warranted.

## IV.    CONCLUSION

Construing the record in the light most favorable to Plaintiff, genuine disputes of material fact—particularly concerning the nature, duration, and justification for the force used, as further illuminated by the Investigation Report—preclude summary judgment on Plaintiff's Fourteenth Amendment excessive-force claim arising from the May 10 Incident. The Court will therefore **DENY** Officer Morgan's Motion.

In addition, pursuant to 28 U.S.C. § 1915(e)(1), the Court will *sua sponte* appoint *pro bono* counsel for Plaintiff.  The Court will also re-open discovery to permit discovery regarding the existence, retention, and production of the surveillance footage referenced in the Investigation Report as well as any other discovery deemed necessary by *pro bono* counsel and permitted by Judge Clark.

An appropriate Order accompanies this Opinion.


Dated: March 20, 2026

Evelyn Padin, U.S.D.J.